IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO



UNITED STATES OF AMERICA,
    Plaintiff,

v.

ANGEL URBINA,
    Defendant.

CVB CITATION NOS.: 9466907 &
                            9466908

**OPINION AND ORDER**

Pending before the Court is defendant Angel Urbina's (the "defendant" or "Mr. Urbina") Motion to Dismiss the two Central Violations Bureau ("CVB") minor violation citations issued to him by Department of Veterans Affairs ("VA") police officers on September 6, 2022 (the "Motion to Dismiss"). For the reasons espoused more thoroughly below, the Court **GRANTS IN PART** and **DENIES IN PART** the defendant's the Motion to Dismiss.

I.    **BACKGROUND AND RELEVANT FACTS**[1]

Mr. Angel Urbina is a sixty-four-year-old veteran of the United States Military who purportedly suffers from a variety of mental and physical ailments including chronic post-traumatic stress disorder ("PTSD"), chronic anxiety disorder, major depressive disorder, trigger finger, etc. Plaintiff submits that his mental conditions are the result of having witnessed, among other things, an individual shoot himself in the head with a rifle. To treat his mental and physical ailments, the defendant visits the VA Hospital located in San Juan, Puerto Rico periodically.

On September 6, 2022, during the COVID-19 pandemic, Mr. Urbina visited the VA Hospital accompanied by his uncle-in-law, Mr. Angel Merced Rivera. The parties disagree as to whether or what type of face covering Mr. Urbina was wearing when

---

[1] This statement of facts was compiled generally from the parties' briefs and is included here for discussion purposes only. The Court is specifically refraining from making any findings of fact because it finds that there are material questions of fact that warrant adjudication.

he entered the VA facilities. The defendant claims he was wearing a cloth face mask and a plastic face shield. *See* Motion to Dismiss at 2. The government, however, claims he was only wearing a face shield. *See* Govt. Response in Opposition at 2, n.1. While standing in line, two VA police officers approached Mr. Urbina and informed him that he was wearing the wrong type of face mask. Mr. Urbina explained that he was wearing that type of face mask because it was the kind that did not make him feel dizzy or sick. Mr. Urbina then asked the officers for permission to go to the restroom. Upon exiting the restroom, Mr. Urbina was met by more officers and subsequently handcuffed and escorted to the Police Operations Room. At some time during his interaction with police, Mr. Urbina is alleged to have acted disorderly by "disrupt[ing] the normal operation of the area by utilizing a loud tone of voice and refus[ing] to follow instructions." *See* Probable Cause Statement associated with Citation No. 9466908.

Mr. Urbina was therefore given two CVB minor violation citations, one charging "disorderly conduct," in violation of 38 CFR § 1.218(b)(11) (s*ee* Citation 9466908) (the "Disorderly Conduct Citation"), and the other charging "failure to comply," in violation of 38 CFR § 1.218(b)(**24**) [sic][2] (s*ee* Citation 9466907) (the "Failure to Comply Citation") (emphasis added). The defendant denies the allegations.

On October 3, 2023, Mr. Urbina filed a Motion to Dismiss, pursuant to Rules 12(b)(1) and 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure, for failure to state an offense. On October 19, 2023, the Government filed an opposition to the Motion to Dismiss (the "Opposition") and on October 25, 2023, Mr. Urbina filed a reply (the "Reply").

---

[2] Title 38 CFR. § 1.218(b)(24) charges "[f]ailure to comply with traffic directions of VA Police," which carries a maximum possible statutory penalty of 6 months of imprisonment and a fine not to exceed $25.00. As will be discussed further below, the government concedes that Citation 9466907 incorrectly cites to 38 CFR § 1.218(b)(24) and submits that it should have cited to § 1.218(b)(6), which charges "[f]ailure to comply with signs of a directive and restrictive nature posted for safety purposes." Section 1.218(b)(6) carries a maximum possible statutory penalty of 6 months of imprisonment and a fine not to exceed $50.00.

## II.   THE MOTION TO DISMISS

In his Motion to Dismiss, the defendant raises four arguments in support of his contention that the two CVB Citations against him should be dismissed. The first two arguments target the Disorderly Conduct Citation, while the second two arguments target the Failure to Comply Citation.

Regarding his challenge to the Disorderly Conduct Citation, the defendant first contends that his "response to the officers who swarmed him does not rise to the level contemplated under the statute governing disorderly conduct," and even if it did, "the [disorderly conduct] provision would [nevertheless] be void-for-vagueness." Second, the defendant argues that he "lacked the *mens rea* and *actus rea* required to commit a violation of 38 CFR § 1.218(11)."

With respect to the Failure to Comply Citation, the defendant first contends that the citation, which charges a violation of 38 CFR § 1.218(b)(24), is completely devoid of probable cause because it relates to the "[f]ailure to comply with traffic directions of VA police," not compliance with signs posted for safety purposes and the use of face masks. And second, assuming the Failure to Comply Citation did include an adequate statement of probable cause, the defendant nevertheless complied with the requirement because he was in fact wearing a mask at the time of the incident.

In response, the government opposes the defendant's motion to dismiss the Disorderly Conduct Citation but agrees that the Failure to Comply Citation is defective because it charges the defendant with violating the wrong section of the Code. The government therefore requests that the Failure to Comply Citation be dismissed, albeit *without prejudice*, and that the Court grant it leave to file an information alleging that the defendant violated 38 CFR § 1.218(b)(6) instead of 38 CFR § 1.218(b)(24).

## III.   LEGAL STANDARD

### A. Petty offenses may be charged through a citation.

In this case, the defendant stands charged with two Class B misdemeanors, both of which qualify as "petty offenses" because they provide for a maximum statutory sentence of six (6) months imprisonment, a fine not to exceed $250, a

processing fee of $30.00 (*see* 28 U.S.C. §1914(b)(item 15)), and a special monetary assessment of $10.00.

Although the defendant stands charge with two petty offenses, Fed.R.Crim.P. 58(b)(1) nevertheless permits the matter to proceed to trial based on the filing of an indictment, an information, or a complaint. Rule 58(b)(1) also provides that petty offenses may proceed by way of a citation or a violation notice. *Id.* Indeed, Rule 58 contemplates that the charging document for petty offenses need not be as formal nor require as much detail as an indictment or information. *United States v. Kowallek*, 438 Fed. Appx 889, 890-91 (11th Cir. 2011); *see also United States v. Taylor*, 2016 WL 11475025 *1 (N.D. Ala., Mar. 07, 2016) (adopting Report and Recommendation *United States v. Taylor*, 2016 WL 1459050 (N.D. Ala., Apr. 14, 2016)) (The magistrate judge, for example, is not required to sign the violation notices in order for a petty offense case to proceed to trial. "[I]f [, however,] the defendant receives a citation or violation notice for a petty offense and fails to . . . appear in court on the date provided in the notice to appear, the court may issue a warrant for the defendant's arrest. Then, and only then, must the judge affix his signature to a warrant of arrest for the defendant, noting the existence of probable cause, based on the sworn statement of the issuing officer contained in the citation.").

Notwithstanding the slightly more relaxed charging requirements for a citation for petty offenses, Rule 58 does contain some safeguards to ensure that a defendant receives the required due process. More specifically, a defendant must be informed of the charges against him at his initial appearance before a magistrate judge. Fed.R.Crim.P. 58(b)(2). And, in cases where the court has had to review the sufficiency of an indictment, it has been held that "even an inadequate indictment satisfies due process if the defendant has actual notice [of the charges against him], such that [he] suffers no prejudice." *United States v. Odom*, 252 F.3d 1289, 1298 (11th Cir. 2001).[3]

---

[3] The concept of prejudice will become more relevant later when the Court addresses the government's request to dismiss the Failure to Comply Citation without prejudice and when it requests

### B. Citations must apprise a defendant of the charged offense so that he can mount a defense and plead double jeopardy.

Under the Federal Rules of Criminal Procedure, an indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." Fed. R. Crim. P. 7(c)(1). However, "[u]like a civil complaint that needs to allege facts that "plausibly narrate a claim for relief," *Germanowski v. Harris*, 854 F.3d 68, 71 (1st Cir. 2017) (quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)), a criminal indictment need only "apprise the defendant of the charged offense," *United States v. Stepanets*, 879 F.3d 367, 372 (1st Cir. 2018) (quoting *United States v. Savarese*, 686 F.3d 1, 7 (1st Cir. 2012) ), "so that [he] can prepare a defense and [can] plead double jeopardy in any future prosecution for the same offense." (quoting *United States v. Guerrier*, 669 F.3d 1, 3 (1st Cir. 2011)). *See also Stepanets*, 879 F.3d at 372; *United States v. Cotto-Ortiz*, No. CR 16-779 (ADC), 2018 WL 3756546, at *2 (D.P.R. Aug. 6, 2018).

Generally speaking, an indictment that tracks the language of the underlying statute is usually sufficient to meet this standard, "provided . . . that the excerpted statutory language sets out all . . . [the] elements of the offense without material uncertainty." *See, e.g., Hamling v. United States*, 418 U.S. 87, 117 (1974); *Savarese*, 686 F.3d at 6; *United States v. Troy*, 618 F.3d 27, 34 (1st Cir. 2010). In other words, the indictment may use the statutory language to describe the offense, but it must also be accompanied by such a statement of facts and circumstances as to inform the accused of the specific offense with which he is charged. *United States v. Mojica–Baez*, 229 F.3d 292, 309 (1st Cir. 2000).

### C. Motions to Dismiss cannot be used to challenge the strength or weakness of the government's case.

Having thus established the scope of notice required by the different charging instruments, from the slightly more formal requirements of an indictment, information, and complaint, to the more informal requirements of a citation, Federal

---

leave to file a new charging instrument based on the defendant's failure to comply with the VA Hospital's mask mandate.

Rule of Criminal Procedure 12(b)(1) provides that a party may attack a charging instrument by raising by pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits.*" Fed. R. Crim. P. 12(b)(1) (emphasis added); *see also United States v. Berrios-Aquino*, 2024 WL 1468488 *2 (D.P.R., April 4, 2024). Importantly, though, a pretrial motion to dismiss may only be granted if the pretrial motion either (1) doesn't address the merits of the case or (2) doesn't require a trial to resolve a dispute on the merits of the case. *See United States v. Pope*, 613 F.3d 1255, 1260 (10th Cir. 2010); *see also United States v. Keleher*, 505 F. Supp. 3d 41, 45 (1st Cir. 2020).

Typically, a pretrial motion to dismiss evaluates a charging document "solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) (quoting *United States v. Sampson*, 371 U.S. 75, 78–79 (1962)); *see also United States v. Chalwell*, ___ F. Supp. 3d. ___, 2023 WL 6346107, *1 No. CR 22-340 (FAB) (D.P.R. Sept. 29, 2023) (citing *United States v. Savarese*, 686 F.3d 1, 7 (1st Cir. 2012)); *United States v. Ngige*, 780 F.3d 497, 502 (1st Cir. 2015); *Guerrier*, 669 F.3d at 3-4; *Stepanets*, 879 F.3d at 372. Such a motion "is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence." *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006); *see also Keleher*, 505 F. Supp. 3d 41, 46 (D.P.R. 2020). The rules limit pretrial review because only the trier of fact has "jurisdiction to decide a defendant's innocence or guilt." *United States v. King*, 581 F.2d 800, 801–802 (10th Cir. 1978).

Indeed, "a court must deny a motion to dismiss if the motion relies on disputed facts." *Stepanets*, 879 F.3d at 372; *see also Guerrier*, 669 F.3d at 4 (finding that reviewing courts "routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations."); *Ngige*, 780 F.3d at 502 (affirming a district court's denial of motion to dismiss the indictment where the defendant's argument "rested on factual disputes left to the factfinder.")

An exception exists, however, that allows courts to consider "evidence beyond the four corners of the [charging document]" to determine the merits of the case. *Hall*,

20 F.3d at 1087–88. For example, courts may consider outside facts in "limited circumstances where the operative facts are undisputed and the government fails to object to the district court's consideration of those undisputed facts . . . ." *Id.* at 1088; *see also United States v. Rodríguez-Rivera*, 918 F. 3d 32, 35 (1st Cir. 2019); *Keleher*, 505 F. Supp. 3d at 46; *Stepanets*, 879 F.3d at 372; *Ngige*, 780 F.3d at 502 (affirming district court's denial of motion to dismiss the indictment where the defendant's argument "rested on factual disputes left to the factfinder"). Notably, judges may consider facts beyond those alleged in the charging document only where undisputed facts present a pure issue of law and not to remedy other oversights in the prosecution of a case. *See United States v. Fadel*, 844 F.2d 1425, 1434 n.10 (10th Cir. 1988); *see also Keleher*, 505 F. Supp. 3d at 46. Instead, courts must focus on whether, "as a matter of law, the government is incapable of proving its case beyond a reasonable doubt." *Hall*, 20 F.3d at 1088. Trial courts are cautioned that such an exception "is indeed . . . rare." *Id.*

A court cannot grant a pretrial motion to dismiss where "contested facts surrounding the commission of the offense would be of any assistance in determining the validity of the motion . . . ." *Pope*, 613 F.3d at 1259; *see also Keleher*, 505 F. Supp. 3d at 46; *Stepanets*, 879 F.3d at 372; and *Ngige*, 780 F.3d at 502.

Though it comes from one of our sister circuits, the case of *United States v. Pope,* is highly instructive on this issue. In *Pope*, the defendant proffered facts to argue that prosecution for possession of a firearm was unconstitutional as applied to him, but the government asserted contradictory facts. *Pope,* 613 F.3d at 1257–58, 1261–62. The court emphasized that, to consider facts outside the charging document, the evidence "must be undisputed in the sense that it is agreed to by the parties— neither side having expressed any objection to its consideration or any objection to its completeness and accuracy." *Id.* at 1261. The parties disagreed as to operative facts, so the court refused to consider the merits of the defendant's constitutional claim. *Id.* at 1257. Instead, the court found that it could only review the "Spartan prose" of the indictment and the facts alleged therein. *Id.*

Here, the Court finds itself in the identical situation of not being able to consider facts beyond those in the charging instruments because the parties dispute the operative facts.

### IV. DISCUSSION

#### A. Defendant's challenge to the Disorderly Conduct Citation must be denied because the Motion to Dismiss relies on disputed facts.

As mentioned above, if there is a dispute over the operative facts in a case, the Court is not empowered to grant a motion to dismiss without celebrating a trial on the merits so the trier of fact can resolve those factual disputes. This case is besieged by disputes over the operative facts. For example, the parties disagree as to whether the defendant was actually wearing a mask when he entered the VA Hospital. Defendant contends that 1) "he was wearing a face shield over a cloth mask," 2) "[a]t that time, [he] wore a cloth mask over the lower part of his face and a clear face shield," and 3) "[t]he officers told him he had to wear a different face mask." *Id.* Motion to Dismiss at p. 2.

The government, in stark contrast, contends in its Opposition that,

> [t]he Defense's motion claims eight different times that the Defendant was actually wearing two masks throughout the incident: a face shield on top of a cloth mask. There is no statement anywhere in the record to suggest that this is true; indeed, Officer Caldero[] wrote that he noticed the Defendant "wearing a face shield with no mask," that he questioned the Defendant about "his reason for not wearing a face mask," that the Defendant said "that he was not required to wear a face mask," and that "he was not going to wear a mask as this impede[d] him to breath[e]," and, finally, that the Defendant eventually "accepted the mask and wore it under the face shield." These are very curious statements for Officer Caldero and the Defendant to have made if the Defendant was already wearing two masks the entire time. If it is true that the Defendant eventually accepted the correct mask and put it on, the implication of the Defense's brief would be that Mr. Urbina concluded the incident by wearing three masks.

Whether or not the defendant was wearing a face mask upon entering the VA Hospital on September 6, 2022, and what type of face mask he was wearing, if any, are operative facts in dispute in this case.

With respect to the disorderly conduct incident, that is also a factual dispute. The defendant claims that "[t]here is no indication that Mr. Urbina was yelling, moving his body aggressively, or acting in a threatening, [or] boisterous manner."[4] *See* Motion to Dismiss at p. 5. He further argues that his discussion with the officers could be described simply as "passive resistance." *Id.* And finally, he describes himself being "swarmed" by officers upon exiting the restroom. *Id.* at 4.

The government, on the other hand, describes a different set of facts. In its Opposition, the government states the following:

> The Defendant informed another officer on scene (Officer Orlando Caldero) that 'he was not required to wear a face mask.' When Officer Caldero informed the Defendant that any medical exemption document he might have would have to be cleared with the screening personnel at the entrance to the building, the Defendant "became upset and raised his tone of voice," saying "that his rights were being violated and that he was not going to wear a mask[,] as this [impeded]" his breathing. Officer Caldero asked the Defendant to accompany him to the Police Operations room to minimize the disruption that he was creating; however, the Defendant announced that he refused to go to the Police Operations Room. The Defendant demanded to see Officer Caldero's "supervisor and then announced that he needed to use the restroom. Officer Caldero permitted the Defendant to walk into the restroom. When the Defendant left the restroom, he was met by Officer Caldero, as well as LT Pedro Melendez. The Defendant then told LT Melendez that he was being questioned "because he refused to wear a face mask . . . ." When LT Melendez informed the Defendant that the mask policy applied to everyone entering the VA facility, and again asked the Defendant to come to the Police Operations Room, the Defendant "became agitated[,] raising his voice and verbaliz[ing] that the only way he was going to the Police Operations Room

---

[4] This statement apparently comes from on eor more documents that were produced by the government through discovery..

> was if we arrest[ed] him." A third officer asked the Defendant . . . to cooperate, but the Defendant "refused to listen and follow instructions."
>
> The Defendant then "raised his voice and pointed his fingers towards" Officer De Jesus, "demanding] [that he] leave him alone." At this point, the officers then restrained Defendant's arms, handcuffed him, and escorted him to the Police Operations room.
>
> Defendant's wrists were evaluated for injuries (none were found). Officer De Jesus offered Defendant a disposable face mask; the Defendant accepted it and wore it under the face shield. He was then released, cited for the two infractions, and permitted to conduct his business at the VA. Although the Defense claims that the Defendant was "arrested," the report says that he was detained, cited, and released.

Based on these competing factual contentions, there is no doubt that there is a dispute of operative facts regarding 1) whether the defendant was wearing a mask upon entering the VA Hospital, and if so, what kind of mask it was, 2) what was the applicable policy for mask usage at the VA Hospital in and around September 2022, and 3) whether the defendant's conduct was disorderly such that he satisfies the elements of a violation under 38 CFR § 1.218(b)(11).

Given these disputes of operative facts, the Court finds that it is limited to analyzing solely the evidence contained within the four corners of the charging document. *See Hall*, 20 F.3d at 1088; s*ee also Rodríguez-Rivera*, 918 F. 3d at 35; *Keleher*, 505 F. Supp. 3d at 46; *Stepanets*, 879 F.3d at 372; and *Ngige*, 780 F.3d at 502. The Court therefore rejects defendant's invitation to do otherwise.

> 1. The charging language in the Disorderly Conduct Citation tracks closely the language of 38 CFR § 1.218(b)(11) and is legally sufficient to bring the case to trial.

A citation that tracks the language of the underlying statute is usually sufficient to meet the notice standard under the law, "provided . . . that the excerpted statutory language sets out all . . . [the] elements of the offense without material uncertainty." *See, e.g., Hamling*, 418 U.S. at 117; *Savarese*, 686 F.3d at 6; *United States v. Troy*, 618 F.3d 27, 34 (1st Cir. 2010). In this case, an analysis of the charging

language in the Disorderly Conduct Citation confirms that it closely tracks the statutory language contained in 38 CFR § 1.218(b)(11). To be sure, 38 CFR § 1.218(b)(11), provides that "[c]onduct in violation of the rules and regulations set forth in paragraph (a) of this section subjects an offender to arrest and removal from the premises." *Id.* at § 1.218(b). An example of the type of conduct that would violate the rules includes,

> 11) Disorderly conduct which creates *loud, boisterous, and unusual noise* **or** which obstructs the normal use of entrances, exits, foyers, offices, corridors, elevators, and stairways **or** *which tends to impede* **or** *prevent the normal operation of a service* **or** *operation of the facility*, $250. (Emphasis added).

*Id.* at § 1.218(b) (emphasis added).

Meanwhile, the probable cause statement attached to the Disorderly Conduct Citation, signed under penalty of perjury by VA Police Officer Orlando Calero, states as follows:

> I state that on September 06, 2022, while exercising my duties as a law enforcement officer in the SJVACHS District of PR 50 at San Juan, [t]he person whose information appears in front according to my investigation and witnesses present, display [sic] Disorderly Conduct at OPA Pharmacy Hallway. *He disrupted the normal operation of the area by utilizing a loud tone of voice and refused to follow instructions.*

*See* Citation No. 9466908 citing to IR#20220906-000681 (emphasis added). As mentioned previously, at a minimum, a criminal indictment need only "apprise the defendant of the charged offense," *Stepanets*, 879 F. 3d. at 372 (quoting *Savarese*, 686 F.3d at 7), "so that [he] can prepare a defense and [can] plead double jeopardy in any future prosecution for the same offense." *Guerrier*, 696 F.3d at 3. Here, the Disorderly Conduct Citation informs the defendant of the date, time, and place the conduct is alleged to have occurred. It identifies the individual alleged to have committed the violation by name, address, date of birth, brief physical description, and social security number. It identifies the name of the principle witness/arresting

officer by name and badge number and clarifies whether the statement is based on his own personal knowledge or whether it is based on permissible hearsay. *See Franks v. Delaware,* 438 U.S. 154, 165 (1978) (probable cause may be founded upon hearsay). And, finally, it provides a brief description of the facts around which the violative conduct is alleged to have occurred.

The Court finds that the Disorderly Conduct Citation adequately apprises the defendant of the charged offense so that he can prepare a defense and can plead double jeopardy in any future prosecution for the same offense. Moreover, the Court finds that the operative language in the probable cause statement tracks the language of the underlying statute and contains all of the necessary elements of the offense without material uncertainty. *See, e.g., Hamling,* 418 U.S. at 117; *Savarese,* 686 F.3d at 6; *Troy,* 618 F.3d at 34. The defendant's attack on the Disorderly Conduct Citation therefore misses the mark.

> 2. Defendant's challenge to the Disorderly Conduct Citation based on arguments involving a lack of *mens reas* and *actus reus* must be denied because it is based on disputed facts.

Where a statute is silent regarding *mens rea* courts impute a general intent requirement. *See, e.g., United States v. Dean,* 367 Fed. Appx. 83 (2010). A general-intent crime is one in which an act was done "voluntarily and intentionally, and not because of mistake or accident. The term refers to whether a defendant intended deliberate, conscious, or purposeful action, as opposed to causing a prohibited result through accident, mistake, carelessness, or absent-mindedness . . ." 21 Am.Jur.2d Criminal Law § 118 (2015). In sum, a general intent crime requires the government prove an act was done knowingly and willfully. *See United States v. Lamson,* 993 F.2d 1540 (4th Cir. 1993) ("As a general intent crime, [the offense] does require proof that the acts were done knowingly and willfully.").

Proof of a defendant's intent, whether it be specific or general, is typically a material question of fact that can only be determined by the trier of fact after a trial on the merits. In this case, the parties dispute whether the defendant committed the alleged violation knowingly and intentionally, Therefore, the Court may not

adjudicate the factual determination of defendant's general intent at this stage of the proceedings. After all, "[t]he government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal . . . ." *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000).

In conclusion, there are significant material questions of fact that exist in this case that make an early resolution of the Disorderly Conduct Citation through a motion to dismiss impossible. The Court therefore **DENIES** defendant's motion to dismiss as it relates the Disorderly Conduct Citation.

**B. Defendant's contention that the disorderly conduct regulation codified at 38 CFR § 1.218(b)(11) is unconstitutional must also fail at this stage of the proceedings due to the fact that there are disputes of operative facts.**

The defendant next contends that "the conduct described in the [government's] investigation reports does not fall under the disorderly conduct provision," but even if it did, that "provision would [nevertheless] be void for vagueness." The defendant appears to be making an as-applied challenge to the VA Regulation proscribing disorderly conduct that occurs within the VA Hospital.[5] The defendant's argument

---

[5] Though the defendant never uses the word "as applied" in the Motion to Dismiss, the Court understands that the challenge is as applied rather than a facial challenge because if it were a facial challenge, this Court would be without jurisdiction to decide the matter.

Although federal courts generally have jurisdiction to consider facial challenges to agency regulations, 5 U.S.C. § 702, this Court lacks jurisdiction to consider the facial validity of a VA regulation if it is constitutional as applied to the individual challenging it. *Szabo*, 760 F.3d 997 (9th Cir. 2014) because of the provisions of the Administrative Procedure Act ("APA").

Chapter 7 of the (APA) provides that "[t]he form of proceeding for judicial review [of agency action] is the special statutory review proceeding relevant to the subject matter in a court specified by statute." 5 U.S.C. § 703 (emphasis added). "[So long as] Congress provides for a 'special statutory review proceeding' in one specific court, challenges to the administrative action must take place in the designated forum." *Preminger v. Principi*, 422 F.3d 815, 821 (9th Cir. 2005) (quoting 5 U.S.C. § 703). For this reason, the facial validity of a regulation may only be raised outside of the designated forum when that forum is somehow inadequate. *See* 5 U.S.C. § 703; *see also F.C.C. v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 468–69 (1984).

Title 38 U.S.C. § 502 mandates that challenges to the facial validity of VA regulations must take place in the United States Court of Appeals for the Federal Circuit. *Principi*, 422 F.3d at 821; *Chinnock v. Turnage*, 995 F.2d 889, 893 (9th Cir.1993); *Preminger v. Sec'y of Veterans Affairs*, 517 F.3d 1299, 1305 (Fed. Cir. 2008). The statute provides:

> An action of the [VA] Secretary to which section 552(a)(1) [of the APA] . . . refers . . . is subject to judicial review. Such review shall be in

does not hold water. And, if anything, his constitutional challenge is premature due to the material disputes of fact.

          *1. Legal standard for void for vagueness challenges.*

A statute or regulation is impermissibly vague under the Due Process Clause of the Fifth Amendment if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Szabo*, (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). Courts consider "whether a statute is vague as applied to the particular facts at issue, for '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *Humanitarian Law Project*, 561 U.S. at 18–19 (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982)). So long as the challenged terms "are clear in their application to [the defendant's] conduct . . . [his] vagueness challenge must fail." *Humanitarian Law Project*, 561 U.S. at 21.[6]

          *2. Defendant's as-applied constitutional challenge to 38 CFR §1.218(b)(11).*

In this case, as described in great detail above, given the material disputes of operative facts that exist in this case, it is impossible for the Court to determine the

---

          accordance with chapter 7 of title 5 and may be sought only in the
          United States Court of Appeals for the Federal Circuit.

38 U.S.C. § 502 (emphasis added).

    [6] In *United States v. Lawrence*, 2018 WL 934858 *5 (Feb. 16, 2018, D. Nev. 2018), the court examined the defendant Lawrence's as-applied vagueness challenge because it noted that a facial vagueness challenge would be unavailable if Lawrence's conduct was clearly proscribed. *Schwartzmiller v. Gardner*, 752 F.2d 1341, 1346 (9th Cir. 1984) (alteration in original) (quoting *Parker v. Levy*, 417 U.S. 733, 756 (1974)). Lawrence's "as-applied challenge . . . turns on whether the [regulation] provided adequate notice to him that his particular conduct was proscribed." *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013). It would have been clear to any reasonable person that threatening an SSA employee constitutes disorderly conduct—any conception of the term "disorderly conduct" would encompass use of Lawrence's profane, threatening language. Therefore, the court concluded that the regulation gave Lawrence adequate notice that his conduct was prohibited and rejected his as-applied vagueness challenge. Having rejected Lawrence's vagueness challenge as applied, the court could not consider Lawrence's facial vagueness argument. *Schwartzmiller*, 752 F.2d at 1346. Accordingly, the district court found that the Magistrate Judge did not err in rejecting Lawrence's argument that the regulation was overbroad and vague.

full extent of the offending conduct that defendant is alleged to have committed at this stage of the proceedings. Therefore, the Court is currently powerless to determine whether or not his conduct falls squarely within the dictates of 38 CFR § 1.218(11). For that reason, the defendant's as-applied challenge to the regulation must fail.

To the extent that the defendant is attempting to make a facial challenge, "facial vagueness review is not common because ordinary canons of judicial restraint do not permit a party whose particular conduct is adequately described by a criminal statute 'to attack [the statute] because the language would not give similar fair warning with respect to other conduct which might be within its broad and literal ambit.'"). *Schwartzmiller*, 752 F.2d at 1346 (alteration in original) (quoting *Parker v. Levy,* 417 U.S. 733, 756 (1974)). In this case, defendant's "as-applied challenge . . . turns on whether the [regulation] provided adequate notice to him that *his* particular conduct was proscribed." *United States v. Lawrence*, 2018 WL 934858 *5 (emphasis added) (quoting *Harris*, 705 F.3d at 932). Because it is not possible for the Court at this stage of the proceeding to adjudicate the factual dispute of whether the regulation gave Mr. Urbina adequate notice that his conduct was prohibited and as such cannot accept his as-applied vagueness challenge, the Court cannot consider at this stage a facial vagueness argument.[7] *Schwartzmiller*, 752 F.2d at 1346.

For all the above reasons, the Court **DENIES** all of defendant's challenges in the Motion to Dismiss related to the Disorderly Conduct Citation.

### C. The Failure to Comply Citation does indeed lack probable cause due to a typographical error which cites to the wrong section of the Code and must be dismissed. The Court however grants the government's request for leave to file a new charging instrument.

The defendant claims that the Failure to Comply Citation lacks probable cause because on its face it charges conduct that does not comport with the statement of probable cause signed-off to by the investigating officer. More specifically, the Failure to Comply Citation charges a violation of Section 1.218(b)(24), which relates to the "failure to comply with traffic directions of VA police," instead of charging conduct

---

[7] That is assuming this Court even had jurisdiction to entertain such a facial challenge.

under Section 1.218,(b)(6), which has to do with the "failure to comply with signs of a directive and restrictive nature posted for safety purposes." The defendant claims that the probable cause statement in the Failure to Comply Citation, which alleges that the Mr. Urbina "[f]ailed to [c]omply with [m]andatory COVID-19 Face mask Policy, . . . and that "[h]e refused to wear a face mask alleging that he was except [sic] to wear it," has nothing to do with traffic directions given by VA police. The plaintiff is correct, and the government also agrees. The government even concedes that the Failure to Comply Citation must be dismissed.

The government, however, requests that the dismissal be *without prejudice* to allow it to amend the charge or to issue a new charging instrument correcting the typographical error in the citation. The government represents that the only change that would be made to the citation will be to correct the erroneously enumerated section. The government argues that such change should cause no surprise nor prejudice to the defendant because he has had actual knowledge of the offending conduct since the very first day the citation was issued. Indeed, the government claims the correction is simply a ministerial task, the purpose of which is to correct a typographical error. After careful consideration of the issue, the Court agrees that the Failure to Comply Citation must be dismissed, but it also agrees that the government should be permitted wide latitude in fixing what is otherwise a typographical error. The Court explains.

Federal Rule of Criminal Procedure 58 governs the procedure for trials of petty offenses. "Rule 58 contemplates that the charging document for a petty offense need not be as formal or require as much as an indictment or information would." *United States v. Kowallek*, 438 F. App'x 889, 890 (11th Cir. 2011). Accordingly, the rule on its face allows a trial of a petty offense to proceed by way of the more informal citation. Fed.R.Crim.P. 58(b)(1). The rule is silent, however, on how a citation may be amended. Where Rule 58 is silent on procedural matters governing petty offenses for which no sentence of imprisonment will be imposed, the rule directs that a "court may follow any provision of these rules [of criminal procedure] that is not inconsistent with this rule and that the court considers appropriate." Fed.R.Crim.P. 58(a)(2).

While the court has found no case law in this circuit directly addressing the appropriate procedure by which a citation may be amended, other courts addressing the issue have analogized citations to informations, and, accordingly, have concluded that the rules governing informations are "instructive" in cases proceeding by citation. *See United States v. Francisco,* 413 F. App'x 216, 218 (11th Cir. 2011); *see also United States v. Bjerke,* 796 F.2d 643, 646 (3rd Cir. 1986) (a violation notice [or a citation] for a petty offense is the "functional equivalent" of an indictment or an information (citing *United States v. Moore*, 586 F.2d 1029, 1031 (4th Cir. 1978)); *United States v. Rife*, 2010 WL 1948891, at *3 (E.D. Mich. May 13, 2010) (same).

This Court finds such rationale highly persuasive and agrees with our sister circuits that the rules governing informations are "instructive" for petty offense cases proceeding by citation or violation notice. However, the court is also mindful that "[p]etty offenses are not given the same level of procedural protection as felony cases." *Dean v. United States*, 436 F. Supp. 2d 485, 491 (E.D.N.Y. 2006) (citation omitted); accord *United States v. Boyd*, 214 F.3d 1052, 1056–57 (9th Cir. 2000) ("[A] violation notice is completed by a law enforcement officer alone, without the oversight of a magistrate" and therefore it "will not be equated with a complaint to begin the Speedy Trial Act's clock."). Accordingly, the Court looks to Federal Rule of Criminal Procedure 7(e), which governs the amendment of an information, for guidance in determining whether leave should be granted to issue a new citation, or an information, to correct the typographical error in the Failure to Comply Citation. Rule 7(e) directs that, "[u]nless an additional or different offense is charged, or a substantial right of the defendant is prejudiced, the court may permit an information to be amended at any time before the verdict or finding." *Id.*

Here, given the probable cause statement in the Failure to Comply Citation, it would have been clear to the defendant from the inception that the charged section, 1.128(b)(24), was referenced erroneously. Therefore, granting leave to correct the charged section would not cause any prejudice to the defendant. Indeed, as is clear from the arguments in the defendant's Motion to Dismiss, he has had actual notice of

the proscribed conduct since September 2022, when the citation was first issued.[8] In *Odom*, 252 F.3d at 1298, the court held that "even an inadequate indictment satisfies due process if the defendant has actual notice [of the charges against him], such that [he] suffers no prejudice." *Id.* Here the Court finds that the defendant has suffered no harm and would suffer no harm by allowing the charging instrument to be corrected to reflect the correct section of the Code.

Therefore, for the reasons espoused herein, the Court **DISMISSES** the Failure to Comply Citation and **GRANTS** leave to the government to file a new charging instrument alleging a violation under 38 CFR § 1.218(b)(6).

### D. Defendant's other challenge to the Failure to Comply Citation fails to pass muster because the argument is based upon disputes of fact.

For the reasons discussed previously, the defendant's final argument attacking the viability of the Failure to Comply Citation must also be denied because it too relies upon disputed questions of fact. In essence, the defendant argues that, even assuming the Failure to Comply Citation had charged the correct section of the Code, it should nevertheless be dismissed because the defendant fully complied with the requirement to wear a mask. In support of that argument, the defendant argues extensively "the flexibility and broadness of the VA mask's [sic] requirement;" the effectiveness of cloth masks; and the fact that "disposable mask," "surgical mask" and "mask," "are used interchangeably" in the agency's own documents and signs. *See* Motion to Dismiss at 11. After raising such arguments, the defendant simply concludes that "[c]learly, Mr Urbina who was wearing a mask on September 6, 2022, complied with he VA Face Mask Policy. *Id.* at 12.

The only thing that is clear is that whether Mr. Urbina was wearing a face mask on September 6, 2022, and whether that face mask complied with the VA Hospital's regulations, is a material question of fact that it is not yet ripe for adjudication. Defendant's Motion to Dismiss must therefore be **DENIED**.

---

[8] Proof of the fact that defendant was on actual notice of the allegations involving the failure to use a face mask is that in Section III(d) of the Motion to Dismiss, he argues that it was an undisputed fact that he was wearing a mask and he also attacks the agency's definition of a mask.

## V.      CONCLUSION

For the reasons espoused above, the Court **DENIES** the defendant's Motion to Dismiss the Disorderly Conduct Citation, **GRANTS** the defendant's Motion to Dismiss the Failure to Comply Citation, *without prejudice*, and **GRANTS** the government leave to file a new charging instrument adding a violation of 38 CFR § 1.218(b)(6) for failure to comply with signs of a directive and restrictive nature posted for safety purposes.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, this 24th day of July 2024.

>                 s/*Marshal D. Morgan*
>                 Marshal D. Morgan
>                 United States Magistrate Judge